563 F.Supp. 679 (1983)
George STORY, et al., Plaintiffs,
v.
John O. MARSH, Jr., Secretary of the Army, et al., Defendants.
UNITED STATES of America, Plaintiff,
v.
11.9 ACRES OF LAND, et al., 62 Acres of Land, et al., 62 Acres of Land, et al., and 1,426.5 Acres of Land, et al., Defendants.
Nos. S83-0065C, S83-0049C, S83-0051C, S83-0052C and S83-0055C.
United States District Court, E.D. Missouri, Southeastern Division.
May 10, 1983.
*680 James E. Reeves, Ward & Reeves, Caruthersville, Mo., Stephen E. Strom, Finch, Bradshaw, Strom & Steele, Cape Girardeau, Mo., for plaintiffs.
Rebecca A. Donnellan, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., Edwin B. Brzezinski, Asst. U.S. Atty., St. Louis, Mo., for defendants.

FINDINGS OF FACTS AND CONCLUSIONS OF LAW
WANGELIN, Chief Judge.
This matter is before the Court on plaintiffs' Motions for Immediate Possession in Case Numbers S83-0049C, S83-0051C, S83-0052C and S83-0055C and on plaintiffs' Motion For Temporary Injunction in Case Number S83-0065C. A Hearing was held on May 9, 1983, at which time the Court considered the Affidavits, and Exhibits submitted by the respective parties and the testimony of Col. John Hatch, District Engineer, Memphis District, U.S. Army Corps of Engineers, the argument of the parties, the affidavits, exhibits, and other testimony which by agreement may be considered in all the cases and the Court makes the following Findings of Facts and Conclusions of Law:
1  In Case Numbers S83-0049C, S83-0051C, S83-0052C and S83-0055C, hereinafter called the "Condemnation Cases", the Government seeks to obtain the right to artificially crevasse portions of the front line levee of Levee District No. 3 and St. Johns Levee and Drainage District and certain flowage and discharge rights from individual land owners which the Government claims is necessary to carry out the flood control plan authorized by the Flood Control Act of 1928, as amended, 33 U.S.C. §§ 702a-702m, and Flood Control Act of 1965, (Public Law 89-298).
2  Plaintiffs' in Case Number S83-0065C hereinafter called the "Injunction Case", seeks an injunction against the Secretary of the Army and his subordinates prohibiting them from artificially crevassing the front line levees of Levee District No. 3 and St. Johns Levee and Drainage District as a part of the operation of the Birds Point-New Madrid Floodway Plan hereinafter called "The Plan", of the defendants during high flood stages on the Mississippi River in the vicinity of Cairo, Illinois.
3  The floodway is an area of approximately 205 square miles and approximately 33 miles long located on the Missouri side of the Mississippi River and is protected by approximately 55 miles of front line levees of Levee District No. 3 and St. Johns Levee and Drainage District including the so called fuse plug sections and a set back levee designed to hold the flood waters within the floodway in the event the front line levee is crevassed or overtopped by the flood waters of the Mississippi River. The area contains about 130,000 acres of highly developed and improved land, approximately 330 residences and a population of approximately 1,300 persons as well as public ditches, highways, historical and archaeological sites.
4  The "Plan" stems originally from the Flood Control Act of 1928 adopting the report of the Chief of Engineers, Edwin Jadwin, House Document Number 90. The original plan was adopted as a result of the disastrous consequences of the flood of 1927 and basically provided for the strengthening of the levees along the Mississippi River and the use of some floodways during times of extremely high water. The Birds Point-New Madrid Floodway was one of the floodways adopted in the Plan and basically provided for a front line levee to protect the floodway until the river reaches a stage of 55 feet on the Cairo gauge at which point the flood water would naturally overtop the front line levee, filling the floodway. The Plan was designed for the protection of Cairo, Illinois.
5  In 1965 the Corps modified the Plan pursuant to the recommendation of the Chief of Engineers published in House Document Number 308, Eighty Eighth Congress by raising the front line levees to a grade of 62.5 feet except for the fuse plug sections at 60.5 feet, and the Cairo flood wall was raised to an equivalent of 65.3 feet *681 on the Cairo gauge and instead of the natural overtopping of the front line levee the Plan of the defendants called for the artificially crevassing of the fuse plug sections of the front line levee by high explosives and heavy equipment when the river reached 58 feet on the Cairo gauge and was predicted to rise above 60 feet.
6  The authority of the Corps of Engineers for the modified Plan is the Flood Control Act of 1965 as follows:
"The project for flood control and improvement of the lower Mississippi River, adopted by the Act of May 15, 1928 (45 Stat. 534), as amended and modified, is hereby further modified and expanded to include the projects and plans substantially as recommended by the Chief of Engineers in House Documents Numbered 308 and 319, Eighty-eighth Congress, at an estimated cost of $181,109,000, except that (1) any modified easements required in the improvement of the Birds Point-New Madrid, Missouri, Floodway shall be acquired as provided by section 4, of the Act of May 15, 1928 * * *".
The recommendation of the Chief of Engineers contained in House Document 308 so far as being relevant to the issues in this case was,
"70. After careful consideration of the report of the Mississippi River Commission, further studies made by the Commission subsequent to completion of its report, and the views of State and Federal agencies, I recommend modification of the Mississippi River and Tributaries project to provide for authorization of additional improvements in the alluvial valley of the Mississippi River between Cape Girardeau, Missouri, and the Head of Passes, Louisiana, as listed below and in the summary table in paragraph 69 of this report * * *
b. Levee improvements in the mainstem levee system and modification of the Birds Point-New Madrid Floodway at an estimated cost of $1,723,000, with the local cooperation requirements set forth in paragraph 18 of this report. * * *".
Paragraph 18 of his report stated:
"18. The Commission considers that local cooperation for the new general levee work should conform to that required for the authorized work. This requires that local interests provide, without cost to the United States, the necessary rights-of-way and borrow areas in accordance with Section 3 of the Flood Control Act of 18 August 1941 as amended by the Act of 22 December 1944, except that the costs of rights-of-way and flowage easements required for future relocation of the levees on the main stem Mississippi River made necessary by caving bank conditions after initial construction should be borne by the United States in accordance with existing authority in subsection (d), lower Mississippi River item, Section 3 of the Act of 18 August 1941 as amended by the Act of 22 December 1944, and that local interests maintain all completed works in accordance with Section 3 of Act of 15 May 1928. The local cooperation recommended for the Birds Point-New Madrid Floodway requires that local interests (a) provide without cost to the United States modified flowage easements to permit operation of the floodway at stages of 58 feet on the Cairo gage by artificial breaching of the levees, which right shall not be limited to the existing fuse plug sections; (b) save and hold harmless the United States from any and all damages due to the construction and operation of the modified plan; and (c) maintain the levees after completion, including the fuse plug sections, in accordance with Section 3 of the Act of 15 May 1928."
7  The defendants have obtained flowage easements on only a part of the floodway required by the Act and have obtained no easements on 15,342 acres nor has it obtained the right to artificially crevasse the front line levee which is the subject matter of the pending Condemnation Cases.
8  The artificial crevassing of the levees is a major Federal action which significantly affects the quality of the environment and could pose serious risk of earthquake damage and the integrity of the set back *682 levee designed to protect the land and communities West of the set back levee, and more than 100 million dollars damage to public and private property in the floodway.
9  The project flood stage (the highest possible or probable flood stage estimated by the Corps to occur no more often than 80 years and which has never occurred) at Cairo, Illinois is 62.5 feet. At that level the present fuse plug sections of the levee will be over-topped by at least 2 feet and due to the natural scouring of the flood waters, the floodway would be filled to its capacity without artificially crevassing before the flood water over-tops the Cairo Flood wall at 65.3 feet.
10  The Corps has not obtained save and hold harmless clauses from local interests. In fact, both levee districts have refused to give such assurances to the defendants.
11  The defendants have filed no Environmental Impact Statement addressing the environmental consequences of artificially crevassing the levee system.
12  Since the Act of 1965, there have been substantial and valuable improvements made within the floodway area and in view of the substantial economic development within the floodway the economic necessity of the operation of the floodway is highly questionable.
13  There is no substantial evidence that artificially crevassing the front line levees is in fact necessary to the successful operation of the floodway or to prevent the overtopping of the flood wall at Cairo, Illinois. Defendants' projections in this regard are predicated upon hypothetical and theoretical conditions based on model tests, and not upon actual observations of flood conditions. Moreover, defendants' witness, Dewey Jones, based his calculations as to the necessity of artificially crevassing the front line levees upon a river stage of some 67 feet on the Cairo gauge. The highest historical stage on the Cairo gauge is only 59.5 feet. In sum, defendants' evidence is too uncertain and speculative to form a rational basis for artificially crevassing the levees.
14  The affidavit of Colonel John F. Hatch, Jr., District Engineer of Corps of Engineers, states at paragraph 3 that:
Access to the levee must be obtained in order to operate the floodway in accordance with the authorization conferred by law. If the Birds Point-New Madrid Floodway is not operated in the time frame as provided in the authorizing legislation, a number of municipalities outside the floodway area will be seriously impacted by flooding.
Defendants' witness, Dewey Jones, who is Chief of the Hydraulics Branch of the Memphis District of the Corps of Engineers, stated in his affidavit at paragraph 7 that:
A reach of the upper St. Francis levee approximately two miles long will be subject to overtopping with the potential for crevasse formation. This will place a large portion of the [sic] southeast Missouri under extreme risk of inundation. Included within this area are the towns of Charleston, Sikeston, East Prairie, and New Madrid, Missouri. In addition, this flooding may not be contained by the Sikeston Ridge. Potentially, floodwater may flow through the low portion of the Sikeston Ridge north of the town of New Madrid. This would greatly increase the flood hazard to several hundred square miles of southeast Missouri and northeast Arkansas.
Mr. Jones reiterated the thrust of the above statements on the witness stand. Jones testified that the red portions of Exhibit E represented those portions of Southeast Missouri (which included the above mentioned municipalities) that would be flooded should operation of the Birds Point-New Madrid Floodway be enjoined. In his testimony, Jones assumed these dire consequences would occur if the flood stage on the Cairo gauge reached 67 feet and operation of the floodway was prevented.
The uncontroverted evidence at trial showed that if 67 feet was reached on the Cairo gauge then the frontline and setback levees would be overtopped regardless of whether artificial crevassing was permitted or not. In short, any conceivable benefit of *683 the Birds Point-New Madrid Floodway would be of no account if the river reached 67 feet on the Cairo gauge.
The utilization of a 67 foot figure as the basis for the Corps' calculations on the projected consequence of enjoining operation of the Birds Point-New Madrid Floodway is a clear indication that the Corps has little, if any, regard for veracity. In the Court's view, the Corps has employed the 67 foot figure as a bald attempt to coerce the Court into placing its imprimatur on the operation of the floodway. The Court does not appreciate such scare tactics. Furthermore, such a ploy only serves to undermine and erode public confidence in the Corps' decisions and the motivations behind those decisions.
15  The damages to Levee District No. 3 and St. Johns Levee and Drainage District directly resulting from the condemnation cases far exceeds the defendants' estimated just compensation of Two Dollars ($2.00) for Levee District No. 3 and One Dollar ($1.00) for St. Johns Levee and Drainage District. The Court finds that the correct estimated compensation which should be deposited is the sum of $6,400,000.00 and $4,000,000.00 respectively.

CONCLUSIONS OF LAW
1  The Court has jurisdiction of the subject matter of this cause.
2  The Flood Control Act of 1965, did not adopt all of the provisions of House Document Number 308. The Act only approved the, "* * * the project and plans substantially as recommended by the Corps of Engineers". The recommendation of the Corps of Engineers in House Document Number 308, paragraph 70(b), did not refer to artificially crevassing the front line levees except indirectly in reference to paragraph 18 of the report requiring local interests to provide modified flowage easements and save harmless agreements. Congress in using the word, "substantially" did not approve of all of the recommendations of the Chief Engineer and its use creates a vagueness and uncertainty as to whether this particular plan received Congressional approval, especially considering the serious and harmful results which would flow from the operation of the plan some 18 years after the purported Congressional authorization.
3  Even if the Act of 1965 authorizes the Corps plan, the defendants have not complied with the Congressional requirements that the Corps obtain flowage easements and save harmless agreements, and until such Congressional terms and conditions have been fulfilled the defendants have no authority to proceed with the operation of the Birds Point-New Madrid Floodway by artificially crevassing the levees.
4  The defendants are required to file an Environmental Impact Statement and comply with the provisions of the National Environmental Policy Act, Section 42 U.S.C. §§ 4331 and 4332. This is clearly a major Federal action significantly affecting our environment and will cause hundreds of millions of dollars of damages within the floodway and could cause a national calamity. Having failed to comply with N.E.P.A. the defendants should be enjoined from further actions or conduct toward artificially crevassing the front line levees.
5  The estimated just compensation deposited in the Condemnation Cases of $2.00 in the case of Levee District No. 3 and $1.00 in the St. Johns Levee and Drainage District is arbitrary and capricious. The claim of the defendants in the Condemnation Cases that they will restore the levees is an attempt to deny the plaintiffs their rights of just compensation and such agreements have not been authorized by Congress and even if authorized by Congress are probably an unconstitutional effort to impair or inhibit the constitutional right to just compensation for the taking of private property. If such a provision were enforceable all the condemnor need do is simply promise to pay the damages and avoid its obligation to pay just compensation and leave it to the private property owner to determine if, how, and what manner, such an agreement can be enforced after his property has been taken.
*684 6  33 U.S.C. § 594, specifically requires the Secretary of the Army in cases of condemnation for river improvements to deposit compensation before the Secretary is entitled to possession. In the event it is determined that the defendants have the legal authority to proceed with the operation of the floodway by artificially crevassing the levees, the Court requires as a condition of obtaining possession of the property rights described in the Condemnation Cases that the defendants deposit the sum of $6,400,000.00 for Levee District No. 3 and $4,000,000.00 for St. Johns Levee and Drainage District as estimated just compensation.
7  A Preliminary Injunction enjoining the defendants from artificially crevassing the levees of the aforesaid levee districts should be issued and the plaintiffs shall not be required to post bond for the reason that there is no present or foreseeable necessity for the operation of the floodway because the flood stages are now declining well below 58 feet on the Cairo gauge and delaying the operation of this plan during the pendency of this action will cause no economic or other injury to the defendants or to the public generally, especially considering that defendants and their predecessors have not obtained the necessary easements and rights to crevasse for 18 years since the passage of the 1965 Act.
8  The Complaint raises other substantial and serious questions which the Court will reserve for decision upon a final decision in the Injunction Case. The above decisions of the Court renders unnecessary decisions on the other claims of the plaintiffs in the Injunction Case at this time.
9  The plaintiffs in the Injunction Case are entitled to a Preliminary Injunction in accordance with these Findings of Facts and Conclusions of Law and is hereby granted without bond.
10  The Government in the Condemnation Cases is not entitled to Immediate Possession and their Motion is hereby denied.